IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAYFUN TAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 24-cv-5189 |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| TRUSTGHQ, | ) |
| JANE DOE a/k/a "JUDITH KSINKY," | ) |
| JOHN DOES 1-10, | ) |
| BAM TRADING SERVICES INC. | ) |
| d/b/a BINANCE.US, | ) |
| TETHER LIMITED, | ) |
| TETHER OPERATIONS LIMITED, and | ) |
| CIRCLE INTERNET FINANCIAL, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

NOW COMES Plaintiff TAYFUN TAN ("Mr. Tan" or "Plaintiff"), by and through his attorneys, Joseph P. Carlasare and Ronald D. Balfour of Amundsen Davis, LLC, and for his Complaint against TRUSTGHQ, JANE DOE a/k/a/ "JUDITH KSINKY," JOHN DOES 1-10, BAM TRADING SERVICES INC. d/b/a BINANCE.US, TETHER LIMITED, TETHER OPERATIONS LIMITED, and CIRCLE INTERNET FINANCIAL, LLC, complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### INTRODUCTION

1. Plaintiff Tayfun Tan is the victim of a sophisticated cryptocurrency fraud scheme perpetrated by TRUSTGHQ, an unincorporated association responsible for a purported online cryptocurrency trading platform.

2.  Specifically, Mr. Tan was victimized by a common scheme that the FBI calls "Pig Butchering." According to the FBI, Pig Butchering is when "fraudsters, posing as highly successful traders in cryptocurrency, entice victims to make purported investments in cryptocurrency providing fictitious returns to encourage additional investments."[1] That is precisely what happened here.

3.  The FBI further explains Pig Butchering as follows:

> Fraudsters make contact with their victims on various social media or dating applications (either spoofing long lost contacts known to the victim or posing as a potential friend or romantic partner) and often spend time gaining the victim's confidence and trust. The victims are then coached through the investment process and encouraged to make continuous deposits by the fraudsters. The fake websites/apps allow the victims to track their investments and give the impression they are growing exponentially. When the victims attempt to cash out their investments, they are told they need to pay income taxes or additional fees, causing them to lose additional funds. The victims are unable to retrieve their purported investments and often lose contact with the fraudsters, either due to the closing of the fraudulent website or the fraudster ceases contact with the victim.[2]

4.  This, too, is precisely what happened to Mr. Tan.

5.  Mr. Tan brings this lawsuit to recover the amounts stolen from him by Pig Butchers calling themselves TRUSTGHQ and Judith Ksinky a/k/a JANE DOE.

6.  As part of their pig butchering scheme, TRUSTGHQ and JANE DOE convinced Mr. Tan to create an account with Trust Wallet, a digital cryptocurrency "wallet" operated in the United States by BAM Trading Services Inc. d/b/a Binance.US ("BINANCE"). The scheme also involved convincing Mr. Tan to transfer funds from his Trust Wallet account to TRUSTGHQ using a cryptocurrency exchange operated by BINANCE. BINANCE knew, or through reasonable

---

[1] https://www.ic3.gov/Media/Y2022/PSA221003 (last visited May 30, 2024).
[2] *Id.*

diligence would have known, that its cryptocurrency wallet and exchange were being used for fraudulent purposes but failed to exercise due care to prevent or reverse the fraudulent transaction.

7. Based on the most recent information available, Plaintiff's funds are currently held by TRUSTGHQ as Tether tokens ("USDT") and USDC Coin ("USDC"), two cryptocurrencies minted by Defendants TETHER and CIRCLE, respectively. TETHER and CIRCLE maintain full control over access to these assets and can prevent TRUSTGHQ from accessing them, or even destroy the existing tokens/coins and reissue new ones.

## THE PARTIES

8. Plaintiff Tayfun Tan is a natural individual. He is a resident within this District, a citizen of Illinois, and currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of Illinois.

9. Defendant TRUSTGHQ is an unincorporated association, the members of which are currently unknown by Plaintiff. TRUSTGHQ operated TRUSTGHQ.com, a purported cryptocurrency exchange used to defraud victims such as Plaintiff. On information and belief, based on domain registration information, TRUSTGHQ is a citizen of China.

10. JANE DOE a/k/a JUDITH KSINKY is an unknown individual who impersonated an individual named "Judith Ksinky" in connection with the scheme by TRUSTGHQ to defraud Plaintiff. JANE DOE's citizenship is unknown at this time but, on information and belief, she is not a citizen of the United States or of any state within the United States.

11. JOHN DOES 1-10 are individuals who acted in the name of, or otherwise on behalf of, TRUSTGHQ and individually participated in the tortious action by TRUSTGHQ alleged herein.

12. Defendant BAM TRADING SERVICES INC. d/b/a BINANCE.US ("BINANCE") is a Delaware corporation with its principal offices located in Florida. BINANCE is a subsidiary of Binance Holdings, Ltd., and operates the Binance cryptocurrency exchange platform in the United States. For purposes of 28 U.S.C. § 1332, Binance is a citizen of Delaware and Florida.

13. Defendants TETHER LIMITED and TETHER OPERATIONS LIMITED (collectively, "TETHER") are incorporated in Hong Kong and the British Virgin Islands, respectively. TETHER LIMITED is the creator and issuer of a cryptocurrency known as Tether, Tether tokens, or USDT. TETHER OPERATIONS LIMITED operates TETHER LIMITED's website and token platform. For purposes of 28 U.S.C. § 1332, TETHER LIMITED is a citizen of a foreign state, Hong Kong. For purposes of 28 U.S.C. § 1332, TETHER OPERATIONS LIMITED is a citizen of a foreign state, the British Virgin Islands.

14. Defendant CIRCLE INTERNET FINANCIAL, LLC ("CIRCLE") is a Delaware, LLC with its principal office in Massachusetts. CIRCLE is the creator and issuer of a cryptocurrency known as USDC Coin or USDC. For purposes of 28 U.S.C. § 1332, CIRCLE is a citizen of Delaware and Massachusetts.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts federal claims under 18 U.S.C. §§ 1961, *et seq*. The Court has pendent subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

16. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of

interest, costs and attorneys' fees, and is an action between a citizen of Illinois, and corporate citizens Delaware and Florida, Massachusetts, and at least two foreign citizens.

17. This Court has personal jurisdiction over Defendants because they directed their tortious activities into the state of Illinois and purposefully caused harm within that state. Defendants' actions in and related to the State of Illinois gave rise to Plaintiff's claims and therefore provide a basis for jurisdiction.

18. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the causes of action accrued in this District. Specifically, Plaintiff resides in this District, took actions in this District in reliance of TRUSTGHQ and JANE DOE's fraudulent conduct, including the transfer and receipt of Ether cryptocurrency (ETH) while within this District, and was harmed within this District. In addition, BINANCE operates the largest cryptocurrency exchanges in the United States, offering its services to those in this District, who trade cryptocurrencies offered by TETHER and CIRCLE, who posses or have control over the cryptocurrencies which were stolen from Plaintiff.

**FACTS COMMON TO ALL COUNTS**

19. On December 4, 2023, Plaintiff Tayfun Tan was contacted by JANE DOE, an unknown individual purporting to be "Judith Ksinky," on the online dating platform EliteSingles.com.

20. JANE DOE provided Plaintiffs with multiple pictures of "herself" so that she would appear to be a legitimate member of the EliteSingles.com dating platform. However, as it turns out, the individual depicted in the pictures is actually a Belgian model named Jolien Orye. On information and belief, JANE DOE misappropriated pictures of Orye from her Instagram profile.

5

21. After some initial discussion through the dating platform, JANE DOE suggested to Plaintiff that they transfer their communications to WhatsApp, where she used a profile associated with telephone number 917-924-2596.

22. During their conversation on WhatsApp, JANE DOE told Plaintiff that she worked for Goldman Sachs and was a successful cryptocurrency investor. JANE DOE persuaded Plaintiff to create an account at a purported online trading platform named TRUSTGHQ, at the website www.trustghq.com.

23. Plaintiff was also instructed by JANE DOE to open a personal account at the Kraken cryptocurrency exchange in December 2023, and then transferred funds to the Kraken account from his personal Citibank account. Trusting JANE DOE and relying on her representations, Mr. Tan followed these instructions.

24. Plaintiff was then instructed to download the Trust Wallet mobile app and send transfers of Ether (ETH) cryptocurrency to a particular wallet address. The Trust Wallet mobile App is owned and operated by BINANCE. JANE DOE told Plaintiff that digital assets sent in this matter would be deposited into his TRUSTGHQ account for trading purposes.

25. Relying on JANE DOE, Plaintiff followed these instructions and transferred ETH to the specified wallet address on ten different occasions from December 11, 2023, through February 26, 2024. The transfers ranged in value from 0.8853 ETH to 19.5866 ETH, and ultimately totaled 112.8207 ETH:

| Date | Amount (ETH) |
|---|---|
| December 11, 2023 | 0.8853 |
| December 15, 2023 | 4.3639 |
| December 19, 2023 | 3.1454 |

| | |
|---|---|
| December 28, 2023 | 12.3395 |
| January 10, 2024 | 15.3896 |
| January 12, 2024 | 19.5866 |
| January 16, 2024 | 13.3884 |
| January 25, 2024 | 17.6900 |
| February 13, 2024 | 14.9980 |
| February 26, 2024 | 11.0340 |

26. Each of these ten transfers was made using Trust Wallet.

27. At least three of the transfers, totaling at least 19.4 ETH, were ultimately deposited into BINANCE accounts.

28. Plaintiff's account on the TRUSTGHQ website showed a corresponding increase in balance after each transfer was made, increasing the false appearance that TRUSTGHQ was a legitimate cryptocurrency exchange. Plaintiff's account also continued to increase with purported profits throughout this time, as JANE DOE led Plaintiff through a series of trades on the platform. The purported balance of Plaintiff's TRUSTGHQ account gradually increased to $1,075,000. These phony increases were designed to keep Mr. Tan invested in the process and transferring funds to TRUSTGHQ, and is in line with the pattern of a Pig Butchering scheme.

29. Early in the process, Plaintiff was successfully able to make two (2) small test withdrawals of ETH, for a total of 0.83 ETH: (1) 0.3989 ETH on or about January 15, 2024; and (2) 0.4311 ETH on or about February 6, 2024. TRUSTGHQ allowed both these withdrawals to take place to further the appearance that it was a legitimate cryptocurrency exchange.

7

30. However, when Plaintiff subsequently sought to make a more significant withdrawal from his account, he was advised by TRUSTGHQ that he would need to contribute an additional sum equivalent to 20% of his portfolio value before his funds could be accessed. This purported requirement that funds needed to be added before anything could be withdrawn made no sense, has no valid justification, and would have offset most or all of the amount withdrawn. This requirement effectively prevented Plaintiff from withdrawing any of his funds.

31. The TRUSTGHQ.com website is no longer available, further preventing Plaintiff from withdrawing any funds from his TRUSTGHQ account.

32. As a result, Plaintiff has been and continues to be unable to withdraw his net principal investment of 111.9907 ETH, which had a market value of $353,315 as of April 26, 2024.

33. Notably, this kind of fraudulent activity appears to be a pattern for TRUSTGHQ. On April 16, 2024, the Washington State Department of Financial Institutions, Securities Division, announced that it had received a similar complaint from a Washington investor who lost over $200,000 in essentially the same scheme. *See* https://dfi.wa.gov/consumer/alerts/trustghqcom-impersonating-cryptocurrency-self-custody-wallet-provider-apparent-pig (last visited May 30, 2024). That investor likewise met a scammer on a dating website who communicated with the investor through WhatsApp and eventually convinced the investor to transfer ETH to a TRUSTGHQ wallet.

34. As further evidence of fraudulent activity, upon each deposit of digital assets by Mr. Tan into his TRUSTGHQ account, TRUSTGHQ transferred the assets through numerous intermediary addresses that appear to be under common control before the assets reached their final destination.

35. Specifically, each time Mr. Tan deposited ETH into his TRUSTGHQ account, TRUSTGHQ fraudulently transferred the ETH through a number of intermediary addresses before they reached their final destination. For example, ten minutes after Mr. Tan's first transfer to TRUSTGHQ, on December 12, 2023, the ETH received by TRUSTGHQ was transferred to a new Wallet address where it was consolidated with ETH from other sources. Less than two hours later the commingled ETH was transferred to a third wallet address. The next day the ETH was sent to a fourth wallet address, and then swapped for Tether (USDT) tokens, another kind of cryptocurrency. The Tether tokens themselves were then transferred in a series of transactions. This kind of chain of transfers is called "layering," and is a technique known to be used by fraudsters to obfuscate funds and make tracing more difficult. Substantially similar layering took place after each of the ten transfers Plaintiff made to TRUSTGHQ.

36. As part of the "layering" process for each of Plaintiff's ten deposits, TRUSTGHQ swapped the ETH for either USDT or USDC. On information and belief, TRUSTGHQ or an individual associated with it continue to hold the funds as USDT and USDC.

**COUNT I**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"),**
**18 U.S.C. §§ 1961** *et seq*.
**(Against TRUSTGHQ, JANE DOE, and JOHN DOES 1-10, collectively the "TRUSTGHQ Defendants")**

37. Plaintiff incorporates Paragraphs 1 to 36 as if fully set forth herein.

38. 18 U.S.C. § 1962(c) outlaws any "pattern of racketeering activity" by any person or enterprise whose activities affect interstate or foreign commerce. A "pattern of racketeering activity" is defined as two or more acts of racketeering activity." 18 U.S.C. § 1961(5)

39. The definition of "racketeering activity" includes, among other things, any act indictable under 18 U.S.C. §§ 1343 (relating to wire fraud), 2314 (interstate and foreign transportation of stolen property), and any offense involving fraud in the sale of securities.

40. TRUSTGHQ, JANE DOE, and JOHN DOES engaged in a pattern of racketeering activity.

41. To start, JANE DOE repeatedly engaged in wire fraud in foreign commerce. 18 U.S.C. § 1343 provides a basis for indicting anyone who has "devise[d] any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses" and thereby "transmits or causes to be transmitted by means of wire…in interstate or foreign commerce, any writings…pictures or sounds for the purpose of executing such scheme[.]" JANE DOE repeatedly engaged in this activity by transmitting false representations through ElitesSingles.com and WhatsApp to Plaintiff for the purpose of defrauding him or otherwise obtaining his funds. These false representations include representing themself as Judith Ksinky, representing that the images of Jolien Orye were actually images of JANE DOE, and – most significantly – representing that TRUSTGHQ was a legitimate cryptocurrency exchange. Through this pattern of racketeering activity, JANE DOE caused Plaintiff to transmit funds through foreign commerce, specifically from himself in Illinois to TRUSTGHQ in China.

42. Indeed, the wire fraud was much more rampant than that. Each time Mr. Tan deposited ETH into his TRUSTGHQ account, TRUSTGHQ and JOHN DOES fraudulently transferred the ETH through a number of intermediary addresses before they reached their final destination. For example, ten minutes after Mr. Tan's first transfer to TRUSTGHQ, on December 12, 2023, the ETH received by TRUSTGHQ was transferred to a new Wallet address where it was consolidated with ETH from other sources. Less than two hours later the commingled ETH was

transferred to a third wallet address. The next day the ETH was sent to a fourth wallet address, and then swapped for Tether (USDT) tokens, another kind of crypotocurrency. The tether tokens themselves were then transferred in a series of transactions. This kind of chain of transfers is called "layering," and is a technique known to be used by fraudsters to obfuscate funds and make tracing more difficult. Substantially similar layering took place after each of the ten transfers Plaintiff made to TRUSTGHQ.

43. TRUSTGHQ and JOHN DOES similarly engaged in repeated wire fraud through its creation of a fraudulent website for a non-existent cryptocurrency exchange; misrepresentations regarding the amounts in Plaintiff's TRUSTGHQ account, which were fake; and misrepresentations that Plaintiff needed to deposit additional funds before he was entitled to withdraw from his TRUSTGHQ account.

44. JANE DOE, TRUSTGHQ, and JOHN DOES also facilitated the foreign transportation of stolen property. 18 U.S.C. § 2314 provides a basis for indicting anyone who has knowingly transported stolen securities or money valued at least $5,000 through foreign commerce, or devised a scheme or artifice to defraud or obtain money through foreign commerce using false pretenses, as described above.

45. Finally, because cryptocurrencies are deemed securities under applicable law, JANE DOE, TRUSTGHQ and JOHN DOE's actions constitute fraud in the sale of securities, specifically Plaintiff's ETH and related trades.

46. This extensive pattern of racketeering activity by TRUSTGHQ, JOHN DOES, and JANE DOE has caused Plaintiff damage in the amount of at least the $353,315, to account for the value of the ETH he deposited. Indeed, because his TRUSTGHQ account was valued at $1,075,000 at the time the website was taken down, Plaintiff is entitled to that full amount.

## COUNT II – FRAUD
### (Against the TRUSTGHQ Defendants)

47. Plaintiff incorporates Paragraphs 1 to 36 as if fully set forth herein.

48. On December 4, 2023, JANE DOE contacted Mr. Tan through the website EliteSingles.com and made several false representations. Those false representations include that her name was Judth Ksinky, that she was employed at Goldman Sachs, and that she was a successful cryptocurrency trader. JANE DOE further represented through WhatsApp that, as a cryptocurrency trader, she recommended that Mr. Tan create an account at TRUSTGHQ.com and transfer digital assets to wallet address belonging to TRUSTGHQ using the Trust Wallet app. JANE DOE knew these representations were false at the time she made them.

49. Mr. Tan reasonably and justifiably relied on these false statements by JANE DOE the first time he transferred digital assets to TRUSTGHQ, and each of nine times thereafter. In particular, JANE DOE's representations that she was a successful cryptocurrency trader employed at Goldman Sachs, and that TRUSTGHQ.com was a reputable cryptocurrency exchange among such traders, were material facts, and Mr. Tan would not have transferred funds to TRUSTGHQ if he had known those representations were false.

50. In addition, from the date of Mr. Tan's first deposit – December 11, 2023 – until April 26, 2024, TRUSTGHQ and JOHN DOES falsely represented to Mr. Tan that the digital assets he transferred to TRUSTGHQ were being kept in an cryptocurrency trading account on his behalf and that the value of the account was raising, to the point that it ultimately reached a purported value of $1,075,000. TRUSTGHQ and JOHN DOES knew these representations were false at the time it made them.

51. Mr. Tan reasonably and justifiably relied on these false statements by TRUSTGHQ each time he transferred digital assets to TRUSTGHQ. But for Defendants' false representations to Mr. Tan, we would not have transferred any digital assets to TRUSTGHQ.

52. As a result of his reliance on these false representations, Mr. Tan has suffered damages of at least $353,512, which was the market value of the Ether (ETH) he has not been able to withdraw from his TRUSTGHQ account as of April 26, 2024.

## COUNT III – CONVERSION
### (Against the TRUSTGHQ Defendants)

53. Plaintiff incorporates Paragraphs 1 to 36 as if fully set forth herein.

54. Plaintiff has transferred to TRUSTGHQ a net total of 111.99 ETH. These digital assets were transferred to TRUSTGHQ for the purpose of retaining custody and engaging in approved cryptocurrency trades, but Plaintiff and TRUSTGHQ have both understood at all times that Plaintiff remained and remains the rightful owner of the ETH.

55. Plaintiff has the immediate, absolute, and unconditional right to withdraw his ETH from TRUSTGHQ and demand its return to him.

56. Nevertheless, on multiple occasions, TRUSTGHQ and JOHN DOES has wrongfully refused to return the ETH to Plaintiff, despite Plaintiff's repeated demands that it do so.

## COUNT IV – NEGLIGENCE
### (Against BINANCE)

57. Plaintiff incorporates Paragraphs 1 to 36 as if fully set forth herein.

58. Plaintiff has transferred to TRUSTGHQ a net total of 111.99 ETH. These digital assets were transferred to TRUSTGHQ through ten different initiating transactions, each of

which was followed by several "layering" transactions utilizing wallet addresses that were used for multiple Pig Butchering schemes.

59. The wallet addresses for each of the ten initial transfers and the subsequent layering transfers were associated with a large volume of suspicious trading activity. The trading activity was suspicious due to the volume of transfers, the velocity of the transfers, and the unusual amounts of the transfers, among other hallmarks of fraudulent transfers.

60. BINANCE knew, or upon reasonable inquiry would have known, that the wallet addresses for the ten transfers and each of the layering transfers were being used for fraudulent activity.

61. In addition, after the layering transactions, funds derived from at least 19.4 ETH of the amount initially transferred by Plaintiff landed in one or more accounts at BINANCE. The pattern of deposit activity into that account was highly suspicious and BINANCE knew, or through reasonable inquiry would have known, that the transactions were fraudulent.

62. BINANCE had a duty to conduct a reasonable inquiry regarding the use of these wallet addresses and accounts for fraud but failed to do so, thereby breaching that duty.

63. BINANCE had a duty to block or otherwise prevent the fraudulent transactions, given that it knew or should have known they were fraudulent. BINANCE breached this duty as well.

64. As a direct and proximate result of BINANCE's breaches of duty, Plaintiff lost 111.99 ETH, or approximately $353,315, through fraudulent transfers that BINANCE should have prevented.

**COUNT V – CONSTRUCTIVE TRUST**
**(Against BINANCE)**

65. Plaintiff incorporates Paragraphs 1 to 36 as if fully set forth herein.

66. After the layering transactions, funds derived from at least 19.4 ETH of the amount initially transferred by Plaintiff landed in one or more accounts at BINANCE.

67. BINANCE has no rightful claim to ownership over these funds, and did not have any such claim at any time. BINANCE would not have possession of these funds but for the fraudulent activity described above, and would be unjustly enriched if it were allowed to keep the funds.

68. BINANCE therefore holds or held the funds in a constructive trust on Plaintiff's behalf. As the constructive trustee, BINANCE has a duty to return these funds to Plaintiff.

### COUNT VI – CONVERSION
### (Against TETHER and CIRCLE)

69. Plaintiff incorporates Paragraphs 1 to 36 as if fully set forth herein.

70. As a result of the fraud and theft described above, Plaintiff's funds are improperly held in the form of Tether Tokens (USDT) and USD Coin (USDC).

71. Plaintiff has the right to immediate, absolute, and unconditional possession of the funds.

72. TETHER controls the portion of Plaintiff's funds that are held as USDT, and CIRCLE controls the portion of Plaintiff's funds that are held as USDC.

73. Plaintiff has demanded that TETHER return the portion of his funds held as USDT, either directly or by blocking TRUSTGHQ's ability to access the existing USDT, but TETHER has refused to do so and has indicated it will not do so without a court order.

74. Plaintiff has demanded that CIRCLE return the portion of his funds held as USDC, either directly or by blocking TRUSTGHQ's ability to access the existing USDC, but CIRCLE has refused to do so and has indicated it will not do so without a court order.

75. As a direct and proximate result of TETHER's and CIRCLE's refusal to return his funds, Plaintiff is unable to access his digital assets, the market value of which was $353,315 as of April 26, 2024.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Tayfun Tan, prays for judgment against defendants as follows:

A.  Finding TRUSTGHQ, JOHN DOES, JANE DOE, and BINANCE, jointly and severally liable;

B.  Ordering compensatory damages of at least $353,512;

C.  Entering an injunction requiring TETHER to transfer the USDT held by TRUSTGHQ and CIRCLE to transfer the USDC held by TRUSTGHQ to a digital wallet belonging to Plaintiff to the extent each belongs to Plaintiff; or alternatively, requiring TETHER to destroy the USDT held by TRUSTGHQ and CIRCLE to destroy the USDC held by TRUSTGHQ to the extent each belongs to Plaintiff, and to reissue an equivalent amount of USDT and USDC to Plaintiff;

D.  Declaring a constructive trust over funds associated with 19.4 ETH that were transferred to BINANCE accounts;

E.  Declaring a constructive trust over the USDT and USDC held by TRUSTGHQ to the extent each rightfully belongs to Plaintiff; or alternatively, awarding damages against TETHER and CIRCLE for an equivalent dollar amount;

F.  Awarding Plaintiff pre-judgment interest;

G.  Awarding Plaintiff his costs and expenses incurred in this action; and

H.  Granting such other and further relief as this Court may deem just and proper.

Dated: June 21, 2024            Respectfully submitted,

                                 By:     */s/ Ronald D. Balfour*

                                        Attorney for Plaintiff

**Amundsen Davis, LLC**
Joseph P. Carlasare  #6308706
Ronald D. Balfour   #6307658
150 North Michigan Avenue, Suite 3300
Chicago, IL 60601
P: 312.894.3200
F: 312.894.3210
jcarlasare@amundsendavislaw.com
rbalfour@amundsendavislaw.com